IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**RONALD CULPEPPER**                          **PLAINTIFF**

CIVIL ACTION NO.: 3:19-cv-362-CWR-FKB

**JJB PIZZA, LLC &**
**RENNETT WILLIAMS, INDIVIDUALLY**                **DEFENDANTS**

### COMPLAINT
### JURY TRIAL DEMANDED

COMES NOW the Plaintiff, Ronald Culpepper, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of his rights under Title VII, 42 U.S.C. § 1981, Age Discrimination (ADEA), and Tortious Interference with Employment. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### THE PARTIES

1. Plaintiff, Ronald Culpepper, is an adult Caucasian male resident of Yazoo County, MS.

2. Defendant, JJB Pizza, LLC, is licensed to do business in the State of Mississippi and may be served with process through its registered agent: David T. Ash, 1818 Crane Ridge Drive, Suite 202A, Jackson, Mississippi 39216.

3. Defendant, Rennett Williams, Individually, may be served at her place of residence: 503 Redbone Road, Vicksburg, MS 39180.

### JURISDICTION AND VENUE

4. This court has federal question jurisdiction and venue is proper in this court.

5. This Court has personal and subject matter jurisdiction over the Defendants and venue is proper in this Court.

6. Plaintiff timely filed a Charge of Discrimination with the EEOC on March 22, 2019, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on April 17, 2019, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files suit within ninety (90) days of receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

7. Plaintiff is a 62-year old Caucasian male from Yazoo County, Mississippi, who was hired by Pizza Hut in 1978 as a crew member and quickly worked his way up to the Assistant Manager position.

8. After a couple of more years, Plaintiff became a Restaurant General Manager.

9. During the early 1990s, Plaintiff worked as an Area Supervisor for three years, but then stepped back down to a Restaurant General Manager position so that he could spend more time with his family.

10. Plaintiff was a very successful Restaurant General Manager with Pizza Hut, Plaintiff's store consistently ranked in the top 10%.

11. Prior to Plaintiff's termination, Plaintiff was one of the older, if not the oldest store general manager of all the stores owned by the Defendant.

12. Also, Plaintiff is one of the very few whites (i.e., less than 10%) in a position of management with the company.

13. The Defendant purchased Pizza Hut stores in 2016.

14. Since the Defendant purchased the Pizza Hut stores, existing white managers have been retained with the Defendant, however, very few whites have been hired as managers, and while

some black managers have been promoted, no white managers have been promoted since the Defendant took over.

15. In June 2016, Plaintiff's store, the Pizza Hut located in Yazoo City, MS, was one of several bought by the Defendant.

16. Immediately following this transition, Plaintiff worked well with his assigned Area Supervisor, and his restaurant continued, as it had for years, to thrive by exceeding expectations resulting in monthly bonuses.

17. Regional territories were changed, however, and Plaintiff's store came under the supervision of a new Area Supervisor, Ms. Renett Williams (African American).

18. From Ms. Williams' initial visit to Plaintiff's store, Ms. Williams seemed to single out Plaintiff in a very negative manner.

19. Although Plaintiff's store continued to excel on every measure, including on blind customer surveys, Ms. Williams found ways to find fault with Plaintiff.

20. Plaintiff was not present during Ms. Williams' first visit to his store, but Ms. Williams voiced openly to several of Plaintiff's employees that it was the worst store she had ever seen.

21. Each time Ms. Williams came, conspicuously most often when Plaintiff was not there, Ms. Williams would frequently voice criticism of Plaintiff openly to the Assistant Manager and other employees.

22. Ms. William's remarks caused confusion and made Plaintiff's working relationship with Ms. Williams very uncomfortable.

23. Nevertheless, Plaintiff did all that he could to comply and make any changes Ms. Williams suggested.

24. After a while of this, changes were again made, and Plaintiff's store came under the supervision of another Area Supervisor.

25. For a while, everything returned to normal and Plaintiff was again perceived as performing in a very positive manner and no negative issues were raised.

26. Then in the summer of 2018, yet another change led to Ms. Williams resuming supervision over Plaintiff's store once again.

27. Immediately, Ms. Williams's negativity toward Plaintiff resumed as well.

28. In the fall of 2018, Plaintiff's store had a surprise inspection.

29. The store passed easily but received a "Standard" rather than the store's usual "Exceptional" score.

30. Although something like this had never been a cause for any serious concern in Plaintiff's many years as a Restaurant General Manager, Ms. Williams highlighted some daily food safety checklist items that had been missed in the surprise inspection.

31. Plaintiff admitted that these items had been mishandled on the day of the inspection, but assured Ms. Williams that generally these times were completed daily.

32. However, despite Plaintiff's assurances, Ms. Williams gave Plaintiff a formal write up in which Ms. Williams accused Plaintiff and his staff of merely signing off on the daily checklist safety items rather than performing them.

33. Moreover, Ms. Williams questioned Plaintiff's honesty and integrity.

34. Ms. Williams had been in the store previously and had checked these same items many times before and had never found or commented on anything that would have suggested a pattern such as she was now claiming.

35. Furthermore, Plaintiff's store had been performing these same actions and

completing the checklists for the past ten years and had never had any problems.

36. Once again, although Plaintiff felt unfairly treated, Plaintiff endeavored to address this issue as Ms. Williams recommended and carried on with his usual degree of professionalism.

37. In October 2018, store managers were asked to rank themselves in one of four categories of a Performance Development Plan (PDP).

38. Plaintiff ranked himself as a "Core Contributor – happy where I am and solidly contributing to the company."

39. On November 5, 2018, Ms. Williams and Division Coach, Mike Gray, came to Plaintiff's store unannounced.

40. During that visit, Ms. Williams referred to Plaintiff's PDP and informed him that he was not a "Core Contributor" but instead was an "At Risk Employee – low performance or unwilling to do the work of a leader." Ms. Williams presented Plaintiff with a Performance Improvement Plan (PIP), a 90-day action plan with follow up every 30 days.

41. Plaintiff was shocked, for as far as he knew he and his store's performance continued to be superior in every facet.

42. Ms. Williams completed PDP and PIP for Plaintiff both ranked him as successful in all areas except for "not bringing my management people along", i.e., not ensuring they were promotable.

43. Ms. Williams further added comments related to Plaintiff's age and years of employment, noting the need for someone who was ready to run the store if he got sick or left.

44. At the time of this action, Plaintiff had an Assistant Store Manager of 24 years, a Shift Manager of 10 years just returning from maternity leave, a Shift Manager of five years, and a Shift Manager in training.

45. Ms. Williams implied that Plaintiff's Assistant Store Manager, Wakeeta Sampson, an employee of the store for 24 years, did not know what she should know in her position.

46. Plaintiff contends that this implication was completely nonsensical.

47. At that time, Ms. Sampson had recently been offered a General Manager position for a new store being opened in Flora.

48. Ms. Sampson turned down the offer for family reasons but clearly had the knowledge necessary to function as a store General Manager.

49. Other staff were knowledgeable as well.

50. Plaintiff notes that the Shift Manager of 10 years was easily ready for promotion to the Assistant Store Manager position if the position were to open.

51. Although Plaintiff disagreed with Ms. William's assessment, Plaintiff put extra measures in place and documented everything to prove that all shift leaders and the Assistant Store Manager were being trained in all areas.

52. Reports were sent to Ms. Williams weekly to support Plaintiff's actions regarding the PIP.

53. Ms. Williams, on the other hand, neither gave feedback at 30-day intervals as the PIP required, nor did she ever have any follow up discussions related to the PIP with Plaintiff.

54. On December 3, 2018, Ms. Williams sent out an email to all store managers in the area she supervised, which included the Performance Development Assessment information on each manager.

55. In the email, Plaintiff was designated as an "At Risk" employee.

56. When Plaintiff received the email, he was extremely embarrassed.

57. The company's policy is that employee information is supposed to be kept

confidential and not shared with peers.

58. This email divulged Plaintiff's employment specifics to all his peers, making him the hot topic for gossip among them.

60. Plaintiff strongly suspected Ms. Williams sent out this information intentionally to humiliate him in the hopes that he would quit.

61. Plaintiff contacted Human Resources and asserted that the email was highly improper and not standard procedure, Human Resources agreed that it should have never happened.

62. Ms. Williams called him that evening to apologize and said it was just "a mistake."

63. On January 15, 2019, the owner of JJB Pizza, LLC, Mike Quinn (African American), came to Plaintiff's store unexpectedly.

64. Mr. Quinn told Plaintiff he was checking on the PIP situation and asked how it was going.

65. Plaintiff's response was "not sure because he had never received any reviews or feedback from Ms. Williams as was required in the PIP."

66. At that point, 70 of the 90 days of the PIP had elapsed.

67. Mr. Quinn promised Plaintiff he would receive follow up within the week.

68. On January 18, 2019, Ms. Williams came to Plaintiff's store unannounced to investigate a couple of situations.

69. In the first situation, an employee had recently transferred from Plaintiff's store to the Flora store. Once there, this employee told the Flora management that a shift manager at the Yazoo store (i.e., Plaintiff's store) had shown her sexually suggestive pictures and had sexually harassed her.

70. This Flora employee also reported to management about a crew member who had

brushed against a female employee inappropriately.

71. Plaintiff had no knowledge of these incidents or the accusations made.

72. Ms. Williams had not discussed the situations with Plaintiff, as one would typically expect would be the case.

73. Instead, Ms. Williams suspended both the shift manager and the crew member.

74. During that same visit, Ms. Williams showed Plaintiff the follow up that she had prepared regarding the PIP.

75. Ms. Williams stated that she had already sent it to Human Resources, but just forgot to send it to Plaintiff.

76. When Plaintiff read over her feedback, it was clearly thrown together in a disorganized and haphazard fashion.

77. Ms. Williams admitted that she would have to revise it and would send him the final version later.

78. However, Ms. Williams stated that it was all positive and he was doing a good job.

79. On January 21, 2019, Ms. Williams returned to Plaintiff's store, met with the two employees accused of sexual harassment, and terminated them.

80. During this same visit, Ms. Williams spoke to Ms. Sampson, Assistant Manager, and Plaintiff and asked them both if they had known about the incidents prior to her coming on the January, 18.

81. Plaintiff again stated that he had no knowledge about either situations.

82. Ms. Sampson admitted that she had known about the incidents, but had taken no action, and had not notified Plaintiff about them.

83. On January 22, 2019, Ms. Williams and Chief Operating Officer of the company,

John McGowan (African American), came to Plaintiff's store.

84. Mr. McGowan gave Plaintiff a document notifying him that he was terminated with "cause after thorough investigation."

85. The stated reason given for the termination was neglectfully handling sexual harassment claims brought to Plaintiff's attention.

86. Mr. McGowan and Ms. Williams claimed that the Flora store employee brought formal charges to Plaintiff's attention about the alleged sexual harassment, and Plaintiff failed to act on the information.

87. This claim is false.

88. While this employee at the Flora store has been employed by the company for less than six months, Plaintiff has been a manager for the company for nearly 40 years and has no history of workplace environmental complaints.

89. Moreover, Ms. Williams never discussed this situation with Plaintiff prior to her investigation and termination of the accused employees.

90. Ms. Williams told Plaintiff that both the accused employees told her that Plaintiff was aware of the incidents.

91. Plaintiff denies ever having had any conversation with either of the accused employees regarding anything about these alleged incidents.

92. Later, both accused employees told Plaintiff that Ms. Williams asked the two of them more questions about whether Plaintiff knew about the incidents, instead of questions about the incidents itself.

93. Both employees said they felt pressured to say that Plaintiff knew about the incidents, so eventually they did.

94. Adding further insult to injury, while Plaintiff was terminated, the former Assistant Store Manager of his store, Ms. Sampson, an African American and a substantially younger person than Plaintiff, was promoted to acting General Manager in charge of the Yazoo City store.

95. This promotion was given although Ms. Sampson openly admitted to Ms. Williams of being aware of the sexual harassment allegations, not informing Plaintiff about them, and taking no action to address them.

96. The Defendant, JJB Pizza, LLC, violated Title VII and 42 U.S.C. §1981 by allowing its employee, Defendant Rennett Williams, to discriminate against Plaintiff based on his race.

97. Also, Defendant, JJB Pizza, LLC, violated the Age Discrimination in Employment Act allowing its employee, Defendant Rennett Williams, to discriminate against Plaintiff based on his age.

98. Defendant, Rennett Williams, tortiously interfered in Plaintiff's employment relationship with Defendant, JJB Pizza, LLC, and Plaintiff Plaintiff has suffered damages as a result of Defendant William's actions.

### CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE VII AND 42 U.S.C. 1981 - RACE DISCRIMINATION

99. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 98 above as if fully incorporated herein.

100. The Defendant, JJB Pizza, LLC, violated Title VII and 42 U.S.C. §1981 by allowing its employee, Rennett Williams, to discriminate against Plaintiff based on his race. Plaintiff is Caucasian; thus, he is protected against discrimination on the basis of his race. Plaintiff was more than qualified for his position. Plaintiff suffered an adverse employment decision in that he was terminated from his position and replace by a much younger, African American female.

101. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## COUNT II: VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

102. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 101 above as if fully incorporated herein.

103. The Defendant, JJB Pizza, LLC, condoned and permitted unlawful age discrimination against Plaintiff by allowing Defendant Williams to intimidate and harass Plaintiff and, ultimately, to cause Plaintiff to be terminated because of his age.

104. Plaintiff has been harmed as a result of this discrimination, and the Defendant is liable to Plaintiff for the same.

105. The acts of the Defendant constitute a willful intentional violation of the ADEA and entitle Plaintiff to recovery of back wages, reinstatement or front pay in lieu of reinstatement, and liquidated damages.

## COUNT III: TORTIOUS INTERFERENCE

106. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 105 above as if fully incorporated herein.

107. Defendant, Rennett Williams, Individually, tortiously interfered in Plaintiff's employment relationship with Defendant, JJB Pizza, LLC. Plaintiff has suffered damages as a result of Defendant William's actions. As such, Plaintiff is seeking an award of compensatory damages in an amount to be determined by the jury to fully compensate him for Defendant William's actions in tortiously interfering with his employment relationship. In addition, Defendant's actions were done maliciously with the intent to cause Plaintiff injury. As such, Plaintiff is entitled to an award of punitive damages against Defendants in amount to be determined by the jury

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages and reinstatement; or
2. Future wages in lieu of reinstatement;
3. Compensatory damages;
4. Liquidated damages;
5. Punitive damages;
6. Attorney's fees;
7. Pre-judgment and post-judgment interest, costs and expenses; and
8. Such further relief as is deemed just and proper.

THIS the 23rd day of May 2019.

Respectfully submitted,

RONALD CULPEPPER

By: _____
Louis H. Watson, Jr. (MB# 9053)
Nick Norris (MB# 101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, MS 39216
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com.com
Web: www.watsonnorris.com